IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRAIG A. JACKSON, #K56205, ) | |
| HON. LOUIS FARRAKHAN, ) | |
| and BEN AMMI, ) | |
| *also known as* DIMONA ISRAEL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 14-cv-00326-JPG |
| ) | |
| PAT QUINN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Craig A. Jackson is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a natural life sentence, plus thirty years, for murder and attempted murder. On March 11, 2014, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). He failed to pay a filing fee or file a motion for leave to proceed *in forma pauperis* ("IFP"). The Clerk of Court advised Plaintiff of this requirement in a letter dated March 18, 2014 (Doc. 3). He was given thirty days to pay the full filing fee or seek leave to proceed IFP. Plaintiff filed an IFP motion on April 15, 2014 (Doc. 4). It is timely. Accordingly, the complaint is now subject to preliminary review under 28 U.S.C. § 1915A.

In the complaint, Plaintiff alleges that forty-four defendants conspired to deprive him of various constitutional rights between 1996 and 2013 (Doc. 1). In a request for relief that spans nine pages, Plaintiff seeks declaratory judgment, a temporary restraining order, and release from prison. For the reasons set forth below, Plaintiff's complaint shall be **DISMISSED** as frivolous, and his request for a temporary restraining order and release from prison shall be **DENIED**.

1

**Co-Plaintiffs Farrakhan and Ammi**

Before addressing the substance of Plaintiff's complaint, the Court must first address the fact that Louis Farrakhan[1] and Ben Ammi[2] are listed as co-Plaintiffs (Doc. 1, pp. 1, 3). Neither appears to be an active participant in this action. Neither co-Plaintiff signed the complaint. Neither has taken affirmative steps to participate in the action. The complaint does not suggest that either co-Plaintiff's rights were violated. In fact, it appears that Plaintiff may have listed co-Plaintiffs Farrakhan and Ammi in connection with his request for appointment of counsel: "Plaintiff should have representation from the Hon. Minister Louis Farrakhan of the Nation of Islam, who is the Messiah of the Christians and Muslims, and Ben Ammi who represents the Messiah of the African Hebrew Israelite Community of Jerusalem of Dimona" (Doc. 1, p. 27). Regardless, it appears that co-Plaintiffs Farrakhan and Ammi were named in this action without their consent.

Accordingly, the Court construes the action as being brought by Plaintiff Jackson alone. The designation of "Plaintiff" in this Order shall refer only to Craig Jackson. Co- Plaintiffs Farrakhan and Ammi shall not be assessed a filing fee for the action.

**The Complaint**

Turning to the allegations in the complaint, Plaintiff alleges that forty-four defendants[3] conspired to deprive him of his constitutional rights between 1996 and 2013. Defendants "us[ed] an illegal wiretap recording device to intimidate, force, and torture" Plaintiff (Doc. 1, p. 20). The device, which was allegedly implanted in Plaintiff by the prosecuting attorney in his 1996 criminal case, can "transmit thought" (Doc. 1, p. 7). Defendants have used the device in

---

[1] Louis Farrakhan is widely known as the leader of the Nation of Islam.
[2] Ben Ammi Ben Israel is the Israeli founder and spiritual leader of the African Hebrew Israelites of Jerusalem.
[3] Included among the defendants are the Governor of Illinois, the Director of the Illinois Department of Corrections ("IDOC"), numerous IDOC employees, and other public officials.

conjunction with a computer to control Plaintiff during his incarceration at Stateville, Pontiac, and Menard Correctional Centers, among other facilities. As a result, Plaintiff has become what he describes as a virtual "walking wiretap" (Doc. 1, p. 7).

He blames this illegal wiretapping for causing the following incidents, among others: an accusation that Plaintiff put a "hit" on a Stateville prison guard (2004) (Doc. 1, p. 10); the transmission of electrical "shocks from [Plaintiff's] feet to his head" resulting in his hospitalization (2009) (Doc. 1, p. 9); "the impression that [Plaintiff] and [his] daughter may have had H.I.V. (Doc. 1, p. 11); "<u>an erection</u> at the push of [a] computer button, which causes Plaintiff to masterbate"[4] (2000-11) (Doc. 1, p. 12) (emphasis in original); a spiritual conspiracy against Plaintiff based on his race (2011) (Doc. 1, p. 14); and a visit to Plaintiff's cell by "Cleric Khan," a Muslim cleric from a foreign country who wants to "radicalize" Plaintiff (2011) (Doc. 1, p. 14). This list of incidents is certainly not exhaustive, but rather representative of the general flavor of Plaintiff's claims.

In addition, Plaintiff repeatedly alleges that various defendants at Pontiac and Menard Correctional Centers have tried to hang him. Although he primarily blames Defendant Hobeck (a Menard official), he also names Defendant Scroggum, Pontiac's correctional staff, the "orange crush team," and internal affairs in connection with this conduct. Plaintiff accuses these defendants of "acting like" they were going to hang him and making him think "they were going to hang" him (around August 2011) (Doc. 1, pp. 11, 15-16). He points to a time when Defendants Hobeck and Scroggum allegedly threw a sheet in front of his cell after asking, "Are you Jackson?" (Doc. 1, p. 17). Plaintiff alleges that he later took the sheet and tied it

---

[4] Plaintiff alleges that he has been trying to figure out how this could happen for eleven years, often visiting the healthcare unit "complaining about his whole urinary system." He claims to have gone "on several hunger strikes just to try to figure out the source of the problem" because blood tests showed "elevated liver enzymes" and "low white blood cell" counts (Doc. 1, p. 12). Plaintiff filed numerous medical records in support of this claim.

around his own neck "to see if officers were trying to kill [him]" (Doc. 1, p. 17). Defendant Hobeck allegedly walked up and grabbed the sheet, tightening it "with all his strength," before Plaintiff heard a voice say "tough love" (Doc. 1, p. 17). Plaintiff later realized that the voice was actually coming from "something in [Plaintiff]" (Doc. 1, p. 18). In connection with these incidents, Plaintiff alleges that a wiretap recording device that measured Plaintiff's fear was sent to the healthcare unit. It is not clear when the incident(s) occurred. However, Plaintiff claims that he described these events "over and over at every court date before every Judge," including a hearing in June 2013 (Doc. 1, p. 11).

Plaintiff now claims that Defendants violated his rights under the Sixth, Eighth, and Fourteenth Amendments between 1996 and 2013. Plaintiff seeks to overturn his conviction. He also seeks release from prison, declaratory judgment, and a temporary restraining order (Doc. 1, pp. 26-34).

### Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **Discussion**

After carefully reviewing Plaintiff's complaint, the Court finds that it is utterly lacking in merit. Plaintiff's claims "lack[] an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. The allegations in the complaint are purely fantasy, unrealistic, and nonsensical. *See Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011). Although the Court is required to accept factual allegations in a complaint as true, some allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks*, 578 F.3d at 581. In this case, Plaintiff's allegations do not cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 570. Plaintiff's claims are meritless, and his complaint is frivolous.

In addition, the Court notes that Plaintiff already filed an action in this Court against many of the same defendants. *See Jackson v. Harrington, et al.*, No. 13-cv-1300-MJR (S.D. Ill., filed Dec. 17, 2013) ("prior action"). Of the forty-four defendants named in the present action, Plaintiff previously sued nineteen of them for the same conduct that gave rise to the instant

complaint (Doc. 1, prior action). The Court dismissed the prior action with prejudice on December 30, 2013 (Doc. 7).

Once again, Plaintiff also ignores the applicable two-year statute of limitations. *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (explaining that Section 1983 claims arising in Illinois are subject to a two-year limitations period under 735 ILCS § 5/13-202). To the extent Plaintiff associates his claims with particular time periods, most of them fall outside of the two-year limitations period. The remaining claims lack any merit.

Finally, Plaintiff cannot challenge his conviction in an action brought pursuant to § 1983. The writ of habeas corpus is used to completely free an inmate from unlawful custody, not a civil rights action. *Preiser v. Rodriguez,* 411 U.S. 475, 484-85 (1973). Accordingly, the Court shall dismiss Plaintiff's complaint with prejudice.

### Request for Temporary Restraining Order

Plaintiff entitles his complaint, "Complaint Under Civil Rights Act Conspiracy And Temporary Restraining Order & Injunction" (Doc. 1, p. 3). Out of an abundance of caution, the Court will address Plaintiff's request for a temporary restraining order. In order to obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

It is not altogether clear why Plaintiff is requesting a TRO. However, he seems to be

seeking it in connection with the alleged hanging attempts.  In his request for relief, Plaintiff asks the Court to "[d]eclare that the threat and conspiracy is imminent and due to the fact that Plaintiff was almost killed by C/O Terry Hobeck and the Hon. Tommy Brewer's investigation is pending" (Doc. 1, p. 33).  Plaintiff raises no claim that presents any likelihood of success on the merits—even his hanging claim.  The complaint does not indicate when these incident(s) occurred other than around August 2011, which is outside the applicable statute of limitations and far removed from an imminent threat of harm.  More importantly, Plaintiff's perception of the events is skewed, based on his own admission in the complaint that the voices he heard during this incident were actually coming from "something in [Plaintiff]" (Doc. 1, p. 18).  Finally, Plaintiff has already requested relief from multiple courts, one of which is currently investigating the matter.  This investigation provides an adequate remedy for Plaintiff.  Under the circumstances, the Court does not find that Plaintiff will suffer irreparable harm if a TRO is not issued in this case.  Plaintiff's request for the TRO shall be denied.

### Disposition

**IT IS THEREFORE ORDERED** that Plaintiff's motion for a temporary restraining order is **DENIED**.

**IT IS FURTHER ORDERED** that the frivolous complaint (Doc. 1) is **DISMISSED** on the merits with prejudice.  Defendants are **DISMISSED** with prejudice.  Plaintiffs **LOUIS FARRAKHAN** and **BEN AMMI** are **DISMISSED** with prejudice and shall not be assessed a filing fee for this case.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action

was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien,* 133 F.3d at 467.  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: April 21, 2014**

s/J. Phil Gilbert
United States District Judge
